**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Lee Sperry,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-18-01484-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Tammy Lee Sperry's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of her application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.* (Doc. 1 at 1; Doc. 10-3 at 27; Doc. 11 at 1). This matter has been fully briefed by the parties.[1] The Court now rules on Plaintiff's appeal.

**I.　BACKGROUND**

The parties are familiar with the background information in this case, and it is summarized in the Administrative Law Judge's ("ALJ") decision. (Doc. 10-3 at 27–41). Accordingly, the Court will reference the background only as necessary to the analysis below.

**II.　LEGAL STANDARD**

The ALJ's decision to deny disability benefits may be overturned "only when the

---

[1] (*See* Docs. 11, 15, 16).

ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

Furthermore, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon

evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

### A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if she can show that, among other things, she is disabled. 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). Finding the claimant "disabled" or "not disabled" at any step ends the inquiry. 20 C.F.R. § 404.1520(a)(4). If such a finding cannot be made at a particular step, then the ALJ continues to the next step. *Id.* The claimant bears the burden

of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the ALJ will find she is not disabled. *Id.*

At the second step, the ALJ considers whether the claimant has a "severe medically determinable impairment physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If she does not, the ALJ will find she is not disabled. *Id.* A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in a routine work setting. *Id.* § 404.1522(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

At the third step, the ALJ considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in 20 C.F.R. 404, subpart P, Appendix 1. *Id.* If the impairment meets or equals a listed impairment, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's "residual functional capacity" ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1)-(2).

At the fourth step, the ALJ considers the claimant's ability to perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and last step, the ALJ considers whether the claimant can "make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529; SSR 06-3p.

### C. The ALJ's Evaluation Under the Five-Step Process

Prior to beginning the sequential evaluation process, the ALJ noted that Plaintiff is the unmarried widow of a deceased insured worker, and has attained the age of 50. (Doc. 10-3 at 30). According to the ALJ, Plaintiff's prescribed period began on January 31, 2008, the date the wage earner died, and ends on November 30, 2019. (*Id.* at 28). Therefore, Plaintiff must establish that her disability began on or before November 30, 2019 to be entitled to disabled widow's benefits. (*Id.*); *see* 20 C.F.R. § 404.335.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 8, 2012, the alleged onset date. (Doc. 10-3 at 30).[2] At step two, the ALJ found that Plaintiff suffered from two severe

---

[2] Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on October 7, 2014, and protectively filed a Title XVI

impairments: lumbar and cervical degenerative disc disease and chronic obstructive pulmonary disease. (*Id.*). At this step, the ALJ also found that Plaintiff's fibromyalgia, anxiety, depression, and Epstein-Barr virus with fatigue and weight loss were non-severe.[3] Under the third step, the ALJ determined that the severity of Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of the impairments listed in the Social Security Regulations. (*Id.* at 33).

Before moving on to step four, the ALJ conducted an RFC determination after careful consideration of the entire record. (*Id.* at 34). Here, the ALJ found that Plaintiff had the "residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)." (*Id.*). At step four, the ALJ compared Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work, and determined that Plaintiff could perform past relevant work as a waitress or server because this work did "not require the performance of work-related activities precluded by" Plaintiff's RFC. (*Id.* at 40). Consequently, the ALJ did not proceed to the final step, and concluded that Plaintiff had not been under a disability from October 8, 2012 to August 7, 2017, the date of the ALJ's decision. (*Id.* at 41–42); *see* 20 C.F.R. § 404.1520(a)(4)(iv) (stating that an ALJ will not proceed to step five if claimant can still perform her past relevant work).

## III. ANALYSIS

Plaintiff asserts that the ALJ's denial of her application for Social Security Benefits and Supplemental Security Income was not supported by substantial evidence and is not free from harmful legal error or abuse of discretion. (Doc. 11 at 2). Specifically, Plaintiff argues that: (1) the ALJ erred by not considering whether Plaintiff's weight loss met or medically equaled Listing 5.08; (2) the ALJ failed to appropriately analyze Chronic Fatigue Syndrome ("CFS") under SSR 14-1p; (3) the ALJ did not satisfy its burden to explore Plaintiff's reasons for her lack of treatment with Dr. Vergason; and (4) the ALJ gave

---

application for supplemental security income on April 12, 2017. (Doc. 19-3 at 28). Both applications allege disability beginning October 8, 2012. (*Id.*).

[3] According to the ALJ, it is unknown if Plaintiff was diagnosed with fibromyalgia. (Doc. 10-3 at 31).

- 6 -

inappropriate weight to the opinion of Dr. Vergason. (Doc. 11 at 2). Accordingly, Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits. (*Id.* at 15). In the alternative, Plaintiff asks that the matter be remanded for consideration of the evidence. (*Id.*).

### A. The ALJ Reasonably Evaluated Plaintiff's Weight Loss

At step two, the ALJ determined that Plaintiff's weight loss was not severe. (Doc. 10-3 at 31). Plaintiff claims, however, that the ALJ erred at step three by failing to consider that her weight loss met or medically equaled Listing 5.08, which covers weight loss due to any digestive disorder. (*See* Doc. 11 at 7–9). Plaintiff argues that despite lacking a digestive disorder, the ALJ should have compared Plaintiff's weight loss with "any pertinent listing," namely, Listing 5.08. (Doc. 11 at 8).

At step three, the ALJ must assess whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment listed in the Appendix to the federal regulations. 20 C.F.R. 404, subpart P, Appendix 1. Conditions set forth in the Listing of Impairments are considered to be so severe that "they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)) (emphasis in original); *see also Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (noting that the plaintiff bears the burden of proving that her impairment meets or equals the criteria of a listed impairment). However, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments" so long as there was an adequate evaluation of the evidence. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Listing 5.08 requires "[w]eight loss *due to any digestive disorder despite continuing*

*treatment as prescribed*, with BMI ["Body Mass Index"] of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6–month period." 20 C.F.R. § 404, Subpart. P, Appendix 1 (emphasis added). Although Plaintiff contends that she met or medically equaled Listing 5.08, she does not allege that a "digestive disorder" caused her weight loss, or even that she suffered from a digestive disorder at all. (Doc. 11 at 8 (admitting that "chronic fatigue syndrome and Epstein-Barr are not 'digestive disorders'")). Plaintiff even admits in her Opening Brief that the "ALJ found Ms. Sperry's weight loss non-severe at Step Two because no gastrointestinal cause for the weight loss could be identified via colonoscopy and because Ms. Sperry's weight stabilized at 105 pounds in January 2015." (Doc. 11 at 7). Accordingly, Plaintiff failed to meet her burden of proving that she met or equaled the criteria of Listing 5.08 because she failed to demonstrate that her weight loss was due to any digestive disorder. *Kennedy*, 738 F.3d at 1176; *Burch*, 400 F.3d at 683; 20 C.F.R. § 404, Subpart. P, Appendix 1. Given the noticeable absence of a digestive disorder in the record, the ALJ was not required to explicitly consider Listing 5.08. Moreover, the ALJ spent two paragraphs considering whether Plaintiff met or medically equaled other Listings related to Plaintiff's severe impairments. (Doc. 10-3 at 33–34).

Plaintiff alternatively argues that "if the ALJ could not determine from the medical record whether [Plaintiff] medically equaled the listing, the ALJ should have obtained medical expert testimony." (Doc. 11 at 8). However, the record had substantial evidence from which the ALJ could determine that Plaintiff did not medically equal the listing due to a lack of digestive issues. The ALJ observed that Plaintiff underwent a "colonoscopy that revealed no chronic gastroenterology issues," and reasonably noted that Plaintiff's "failure to follow-up with Dr. Vergason for her chronic fatigue and weight loss secondary to Epstein-Barr" for over a year "suggest improvement of her symptoms." (Doc. 10-3 at 31).[4] Thus, not only can Plaintiff not demonstrate that her weight loss was "due to any

---

[4] *See Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) (stating that an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" so long as the claimant fails to assert "a good reason for not seeking treatment"); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th

digestive disorder," but she is unable to establish Listing 5.08's "continuing treatment as prescribed" requirement. Further, Plaintiff identified no evidence establishing any functional limitations caused by her weight loss beyond those already accounted for by the ALJ in the RFC determination. (*See* Doc. 11 at 7–9; Doc. 10-3 at 31, 34–35 (portions of the ALJ's opinion considering Plaintiff's weight loss)); *Burch*, 400 F.3d at 683 (noting that the claimant "has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis" and concluding that "the ALJ did not commit reversible error by failing to consider [the claimant's] obesity in determining whether she met or equaled the requirements of a listed impairment.").

Relying on *Nunes v. Berryhill*, No. 17-CV-00706-RMI, 2018 WL 1399852, at *5 (N.D. Cal. Mar. 20, 2018), Plaintiff also argues that she preserved the Listing 5.08 equivalency argument by "stating in her own words that weight loss was a severe impairment" at her hearing. (Doc. 11 at 9). Nevertheless, Plaintiff's reliance on *Nunes* is misguided. In *Nunes*, the Court determined that the Commissioner's argument that the claimant waived the right to argue that she met Listing 5.08 was without merit because the claimant presented the Listing 5.08 theory in her own words in a pre-hearing brief and at her hearing, in addition to an abundance of medical evidence supporting Listing 5.08 equivalence. *Nunes*, 2018 WL 1399852, at *5. Unlike the claimant in *Nunes*, whose gastrointestinal disorder resulting in weight-loss was well-documented throughout the record, *id.* at *2–3, 6, Plaintiff's medical records do not document the presence of a digestive disorder, (Doc. 10-3 at 31). Further, while the claimant in *Nunes*' statement at her hearing that she had severe IBS and couldn't keep weight on clearly attributed her weight loss to a gastrointestinal disorder, *Nunes*, 2018 WL 1399852, at *5, Plaintiff's statement at her hearing that she'd "lost so much weight," gave no indication that her weight loss was due to a digestive disorder. (Doc. 10-3 at 55). Plaintiff's hearing testimony did not suggest that she was intending to present a Listing 5.08 theory. As "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to

Cir. 1982) ("In reaching his findings, the [administrative] law judge is entitled to draw inferences logically flowing from the evidence.").

- 9 -

any listing in an equivalency determination, *unless* the claimant presents evidence in an effort to establish equivalence[,]" *Burch*, 400 F.3d at 683 (emphasis added), the ALJ did not err by not explicitly considering whether Plaintiff met or medically equaled Listing 5.08 at step three. Accordingly, the Court finds that the ALJ reasonably evaluated Plaintiff's weight loss.

### B. The ALJ Properly Analyzed Plaintiff's Fatigue Under SSR 14-1p

At step two, the ALJ determined that Plaintiff's fatigue was non-severe. (Doc. 10-3 at 31). Plaintiff claims that the ALJ failed to appropriately analyze chronic fatigue syndrome under SSR 14-1p because laboratory findings ruled out other causes for her fatigue, leaving her with a CFS diagnosis within the meaning of SSR 14-1p. (Doc. 11 at 9–10). In doing so, Plaintiff relies on the portion of SSR 14-1p providing that "a physician can make the diagnosis of CFS based on a person's reported symptoms alone after ruling out other possible causes for the person's symptoms." SSR 14-1P, at *4 (S.S.A. Apr. 3, 2014).

Contrary to Plaintiff's assertion that her doctors had ruled out other causes for her fatigue, however, Dr. Vergason was still trying to determine the cause of Plaintiff's fatigue as late as November 2016, noted that her CFS was unspecified, and stated that other medical conditions might explain her symptoms. (Doc. 10-10 at 141–42, 145–46 (assessment from visit with Dr. Vergason on November 14, 2016 indicating that Dr. Vergason would "continue to investigate for other causes" of Plaintiff's fatigue)). In his decision, the ALJ indicated that other possible causes for Plaintiff's fatigue had not been ruled out, as he noted Dr. Vergason's finding "that despite significant workup, no cause was identified that would result in severe debilitating fatigue." (Doc. 10-3 at 31 (citing Doc. 10-9 at 2)). The ALJ also mentioned Dr. Vergason's report that Plaintiff had "profound fatigue of unknown etiology." (Doc. 10-3 at 39 (citing Doc. 10-10 at 70)). Not only could Dr. Vergason not identify a cause for Plaintiff's fatigue, but Plaintiff also failed to follow up with Dr. Vergason for seventeen months for her fatigue symptoms, suggesting the symptoms had improved. (Doc. 10-3 at 31). When Plaintiff did return to see

Dr. Vergason, he continued to test for other causes, even those previously ruled out. (Doc. 10-10 at 142 (ordering laboratory testing on November 2, 2016 to re-check Plaintiff for human immunodeficiency virus as a possible cause for her fatigue)). As SSR 14-1p provides that "a physician should make a diagnosis of CFC 'only after alternative medical and psychiatric causes of chronic fatiguing illnesses have been excluded[,]'" SSR 14-1p, at *2, the ALJ did not err in discounting Plaintiff's fatigue symptoms after determining that Dr. Vergason could not identify the cause of Plaintiff's fatigue. *See also Reddick*, 157 F.3d at 726 (noting that a final diagnosis of CFS is made "by exclusion" by "ruling out other possible illnesses").

Plaintiff also argues that the ALJ erred after step two in discounting Plaintiff's symptoms of fatigue on the grounds that "Plaintiff's back pain was stable and well controlled with her current dose of pain medication." (Doc. 11 at 10–11 (citing Doc. 10-3 at 35–37)). Nevertheless, "[i]mpairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Although Plaintiff claims that the ALJ relied on "isolated moments of stability" and cherry-picked certain records to discount her symptoms of fatigue, (Doc. 11 at 10–11), substantial evidence supports the ALJ's findings that Plaintiff's pain was well controlled. Specifically, the ALJ referred to records from 2014 through 2016 showing that Plaintiff's back pain was consistently stable and controlled with pain medication. (Doc. 10-3 at 35–36 (citing Docs. 10-9 at 2–4, 108; 10-10 at 138–39)). Further, even if substantial evidence supports Plaintiff's interpretation of the evidence, this does not establish error. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that the claimant is not disabled."). As substantial evidence supports the ALJ's findings here, the Court cannot find that the ALJ erred on this basis.

Even though the ALJ did not specifically mention SSR 14-1p in his decision, the ALJ met its fundamental standard by considering Plaintiff's fatigue and reasonably

- 11 -

accounting for any functional limitations caused by her fatigue when determining her RFC. (Doc. 10-3 at 35–40); *see* SSR 14-1p, at *8 (noting that in assessing a claimant's RFC, "we must consider all of the person's impairment-related symptoms in deciding how such symptoms may affect functional capacities"). Dr. Khumalo, who the ALJ gave partial weight in formulating Plaintiff's RFC, opined that Plaintiff could perform light work with 5 hours of standing/walking during an 8-hour workday and could occasionally climb, stoop, kneel, crouch, and crawl, even after noting Plaintiff's reports of fatigue. (Doc. 10-3 at 38 (citing Doc. 10-8 at 75–76)). Likewise, Drs. Fahlberg and Maloney, after considering Plaintiff's reports of fatigue, also opined that she could perform light work, and could frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs, but could only occasionally climb ladders, ropes, and scaffolds. (Doc. 10-3 at 40; *see also* Doc. 10-4 at 8–9, 11, 15–17, 45, 47–50). The ALJ gave the opinions of Drs. Fahlberg and Maloney significant weight after finding them consistent with Plaintiff's "mostly normal physical examinations, diagnostic testing, conservative treatment, [and] improvement of her pain with her current medication regimen." (Doc. 10-3 at 40). Based upon the opinions of physicians who considered Plaintiff's complaints of fatigue and the ALJ's own careful consideration of the entire record, the ALJ "found some limitations due to her subjective complaints of pain and limited the claimant to light work." (*Id.* at 34, 36). Accordingly, the Court finds that the ALJ reasonably evaluated Plaintiff's fatigue and accounted for her fatigue symptoms in his RFC finding.

## C. **The ALJ Did Not Have a Duty to Investigate the Gap in Plaintiff's Medical Treatment with Dr. Vergason**

Plaintiff asserts that the ALJ erred by failing to explore why the record reflected a seventeen-month gap in Plaintiff's treatment with her primary care physician, Dr. Vergason. (Doc. 11 at 12). According to Plaintiff, "it was incumbent upon the ALJ to inquire of Ms. Sperry why she was not receiving treatment" from June 2015 through October 2016 "rather than make assumptions about her condition." (*Id.*).

Rather than showing that records exist from this time frame, Plaintiff merely

speculates that the records might exist, but were not exhibited, "due to the vagaries of the timing of various records requests over the course of the disability appeal[.]" (Doc. 11 at 12). However, the Court agrees with the Commissioner that "[t]his speculation does not create a duty for the ALJ to develop the record." (Doc. 15 at 12). An ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, the record before the ALJ in terms of Plaintiff's treatment by Dr. Vergason, or lack thereof, was neither ambiguous nor inadequate. Furthermore, Plaintiff presents no argument on appeal that the record was inadequate to properly evaluate the evidence, or that the evidence itself was ambiguous. (*See* Docs. 11, 16). Substantial evidence supported the ALJ's decision that Plaintiff was not disabled. Moreover, while the ALJ has a "duty to develop the record fully and fairly," that duty is shared with Plaintiff, who must prove that she is disabled by furnishing medical evidence demonstrating the existence and severity of her impairments. *Id.* (citing 20 C.F.R. § 404.1512(a) (2000)). Indeed, Plaintiff even admitted in her Reply Brief that "she has a duty to furnish relevant medical records, and that a failure to supply Dr. Vergason's records between June 2015 and October 2016 may not properly be ascribed as an error on the ALJ's part." (Doc. 16 at 7).

To the extent that Plaintiff contends that the ALJ failed to follow the requirements of SSR 16-3p, this argument also fails. (Docs. 11 at 12; 16 at 7). SSR 16-3p provides, in relevant part, that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p, at *9 (S.S.A. Oct. 25, 2017). In support of her argument that the ALJ had a duty to ask why there were no records from Dr. Vergason between June 2015 and October 2016, Plaintiff relies on the portion of SSR 16-3p which states: "We will not find an individual's symptoms inconsistent with the evidence in the record on this basis

- 13 -

without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." (Doc. 11 at 12 (citing SSR 16-3p, at *9)). Nevertheless, this portion of SSR 16-3p does not explicitly require the ALJ to ask the claimant at the hearing why he or she has failed to continue treatment. Rather, an ALJ may permissibly discount a claimant's testimony if a review of the record suggests that "[a]n individual's symptoms [were] not [] severe enough to prompt him or her to seek treatment[.]" SSR 16-3p, at *10.

That is the case here. After reviewing the record, the ALJ determined that Plaintiff's "failure to follow-up with Dr. Vergason for her chronic fatigue and weight loss secondary to Epstein-Barr suggest improvement of her symptoms, within a year, since her initial diagnosis in March 2014." (Doc. 10-3 at 31). Given that Plaintiff failed to seek treatment for Dr. Vergason for seventeen months but yet was able to complete activities of daily living such as gardening and household chores, the ALJ reasonably discounted Plaintiff's subjective complaints on this basis. (Doc. 10-3 at 38); *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that the ALJ properly discounted the claimant's pain testimony because it was inconsistent with her own testimony about her daily activities). The ALJ did not have a duty to develop the record further or ask Plaintiff why she did not receive treatment from Dr. Vergason between June 2015 and October 2015. *Cf. Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("There is no merit in Tonapetyan's contention that the ALJ should have given her a chance, while at the hearing, to explain the inconsistent statements and other factors that led him to find her not credible. Even if we discount some of the ALJ's observations of Tonapetyan's inconsistent statements and behavior, which might have innocent explanations as Tonapetyan contends, we are still left with substantial evidence to support the ALJ's credibility determination.").

Likewise, the Ninth Circuit has held that an "'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

However, there is no indication that any of these "good reasons for not doing so" apply here. Plaintiff does not allege that she would have liked to see Dr. Vergason more often but could not do so because she was unable to afford it; thus, the circumstances which obligated the ALJs to investigate the gaps in the claimants' treatments in *Orn v. Astrue* and *Jenkin v. Comm'r of Soc. Sec. Admin.* do not apply. *See Orn*, 495 F.3d at 638; *Jenkin v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00341-TUC-EJM, 2018 WL 4275405, at *12 (D. Ariz. Sept. 7, 2018). Accordingly, the Court finds that the ALJ followed the requirements of SSR 16-3p and did not err in discounting Plaintiff's testimony for her failure to seek treatment over the seventeen-month gap between June 2015 and October 2016.

### D. The ALJ Did Not Err in Assigning "Little Weight" to the Opinion of Dr. Vergason

Plaintiff finally argues that the ALJ improperly discounted the opinion of Dr. Vergason, her treating physician, because the ALJ failed to articulate specific and legitimate reasons for rejecting his opinions. (Doc. 11 at 14). The Court disagrees.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester*, 81 F.3d

at 830. Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

When evaluating Plaintiff's impairments, the ALJ afforded little weight to the opinions of Dr. Vergason, which were contradicted by the opinions of Drs. Fahlberg, Maloney, and Khumalo. (Doc. 10-3 at 38–40). For the reasons set forth below, the Court finds that the ALJ provided "specific and legitimate reasons that are supported by substantial evidence" for assigning little weight to the opinion of Dr. Vergason. *Ryan*, 528 F.3d at 1198.

In affording little weight to Dr. Vergason's opinions, the ALJ first found that the limitations set forth in Dr. Vergason's opinions were unsupported by his own treatment notes showing that Plaintiff denied back and joint pain and regularly reported that her pain was controlled with pain medication. (Doc. 10-3 at 39 (citing Doc. 10-9 at 18, 20, 29, 42, 52, 65, 72, 80–81, 92, 96)). Not only are "[i]mpairments that can be controlled effectively

with medication not disabling[,]" *Warre*, 439 F.3d at 1006, but inconsistency between a physician's opinion and a claimant's medical records constitutes a "specific and legitimate reason" for rejecting the opinion of that treating physician. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ reasonably discounted the opinion of a treating physician because the medical records did not support the limitations the physician set forth in her opinions); *see also Valentine*, 574 F.3d at 692–93 (holding that the ALJ sufficiently justified its rejection of a treating psychologist's contradicted testimony because it conflicted with the psychologist's own treatment notes). Further, the ALJ noted various instances where Dr. Vergason's clinical examinations demonstrated normal physical findings inconsistent with Dr. Vergason's opinions, including preserved/symmetric reflexes, negative straight leg raise tests, normal sensation, and intact cranial nerves without edema, myalgia, or joint swelling. (Doc. 10-3 at 35 (citing Doc. 10-9 at 15, 20, 26, 32, 45, 72, 83, 108, 112, 116–17)). As substantial evidence supports the ALJ's finding that Dr. Vergason's opinions were unsupported by his own treatment notes, the ALJ did not err in discounting Dr. Vergason's opinions on this basis. *Tommasetti*, 533 F.3d at 1041.

Next, the ALJ discounted Dr. Vergason's opinions because they contradicted other medical opinions and medical findings in the record. The ALJ reasonably discounted Dr. Vergason's opinions because the opinions of Drs. Khumalo, Fahlberg, and Maloney, who all considered Plaintiff's fatigue, contradicted his findings. (Doc. 10-3 at 38–40). The ALJ also pointed out that Dr. Vergason's opinions were inconsistent with the May 2017 examination findings of Dr. Arora, a treating neurologist, including Dr. Arora's observations that Plaintiff was "well nourished and in no acute distress," and had normal muscle tone, strength, and sensation. (*Id.* at 39 (citing Doc. 10-10 at 182–83)). As a physician's opinion of the level of impairment may be rejected because it is unreasonable in light of other evidence in the record, the ALJ also did not err in discounting Dr. Vergason's opinion on this basis. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

Finally, the ALJ discounted Dr. Vergason's opinion because he found that Dr. Vergason "rel[ied] heavily on the claimant's subjective complaints as he indicated that the claimant had profound fatigue of unknown etiology." (Doc. 10-3 at 39). "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Tommasetti*, 533 F.3d at 1041 (holding that the ALJ's rejection of the treating physician's opinion was supported by specific and legitimate reasons where the ALJ stated that the treating physician's assessment was essentially a "rehashing of claimant's own statements" and was therefore undermined by the ALJ's finding that the claimant was not credible)). However, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations," the ALJ has no basis to reject that opinion on these grounds. *Id.*

Here, the ALJ found Plaintiff's complaints of fatigue to be non-severe. (Doc. 10-3 at 31). Further, the ALJ specifically indicated that "[d]iagnostic testing does not show the claimant had limitations that warranted less than a full range of light work[,]" (Doc. 10-3 at 39), and Dr. Vergason collected no objective or clinical evidence tending to corroborate Plaintiff's reports of fatigue. In fact, Dr. Vergason never identified any medical cause for her fatigue, which the ALJ noted. (*Id.* at 39–40). Any such evidence indicating fatigue necessarily came from Plaintiff's self-reports. Accordingly, the ALJ reasonably discounted Dr. Vergason's opinions because Dr. Vergason relied more heavily on the claimant's subjective reports—which the ALJ properly discounted—than on objective and clinical evidence. *Ghanim*, 763 F.3d at 1162. As the ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Vergason's contradicted opinions, the Court is unable to find that the ALJ erred.

//
//
//
//

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 8th day of April, 2019.

James A. Teilborg
Senior United States District Judge